**UNITED STATES of America,**
**Appellant,**

v.

**Bernard E. ROESSLING, etc., et al.,**
**Appellees.**

No. 17857.

United States Court of Appeals
Fifth Circuit.

July 19, 1960.

Rehearing Denied Aug. 30, 1960.

**934**

William A. Montgomery, Morton Hollander, Atty., Dept. of Justice, Washington, D. C., Robert F. Nunez, Asst. U. S. Atty., Tampa, Fla., George Cochran Doub, Asst. Atty. Gen., James L. Guilmartin and E. Coleman Madsen, U. S. Attys., Miami, Fla., for appellant.

Paul Game, Tampa, Fla., B. E. Roessling, Green Cove Springs, Fla., for appellees.

Before RIVES, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

RIVES, Chief Judge.

The United States sought to collect a loan and to that end to foreclose a mortgage on real property. It obtained an in personam judgment against the mortgagors for the debt, but was denied foreclosure on the property. It appeals from such denial.

The Government loan was made pursuant to the Emergency Relief Appropriation Act of 1935, 49 Stat. 115, and to the President's Executive Order No. 7027, issued April 30, 1935, delegating to the Resettlement Administration the power to make loans under said Act. It was secured by a mortgage on real property owned by the mortgagors in Hillsborough County, Florida.[1] The mort-

---

1. This instrument provided that the mortgagors "granted, bargained and sold" the land to the Administrator of the Resettlement Administration or his successors, but that the mortgage would "cease and be null and void" if the mortgagors paid the note it secured, in addition to any other sums thereafter advanced, and performed certain specified obligations. Among these was the mortgagors' duty to "pay all taxes which may accrue on said land * * *." The Florida doctrine is that a mortgagee "has no title to convey, and *his interest in the land* was a lien of a mortgage to secure the payment of a note * * *." (Emphasis supplied.) Jordan v. Sayre, 1892, 29 Fla. 100, 10 So. 823, 827. See, also, Hemphill v. Nelson, 1928, 95 Fla. 498, 116 So. 498, 499. In the case of Waldock v. Iba, 1934, 114 Fla. 786, 150 So. 231, 803, 153 So. 915, the Florida Supreme Court used the expression, "a mortgage *does not create an interest in the land.* It is a chose in action which creates a lien on land." (Emphasis

gage was duly recorded on April 19, 1937, in the public records of the County. Thereafter, the County taxes assessed against the land for the year 1940 were not paid. Florida law provided that a lien was imposed for the assessed amount, which was said to constitute "a first lien superior to all other liens" on the property, and to continue "in full force and effect until discharged by payment." Fla.Stat.Ann. § 192.21. By statute the taxes became delinquent on April 1, 1941.[2]

Pursuant to Sections 193.51 and 193.54 of the Florida Statutes Annotated, the property was sold to the County and on July 7, 1941, a tax sale certificate in the amount of $19.63 was issued to the County. See Fla.Stat.Ann. § 193.59(1). The only notice of this sale which the statute required was publication in a newspaper "once each week for four consecutive weeks" before the sale, or, if no newspaper was published in the county, "posting in three public places in the county * * *." Fla.Stat.Ann. § 193.51.

In accordance with the provisions of Fla.Stat.Ann. § 194.47, the County, in 1943, filed an action in the Circuit Court of Hillsborough County to quiet title. Section 194.47 directs that, if the property covered by a tax sale certificate has not been redeemed or purchased within two years after the date of issuance of the certificate to a county, the county shall file a bill of complaint against the land. It expressly makes unnecessary the naming "as defendant in such bill of complaint, or proceeding, any person or persons owning or having any interest in or lien upon such lands," and provides that "[j]urisdiction of all of said lands and of all parties interested therein or having any lien thereon at the date of filing of such suit shall be obtained by publication of notice * * *." The United States was not named in the suit filed by Hillsborough County in 1943.

On August 28, 1944, the Circuit Court of Hillsborough County entered a decree under this statute declaring title to the property here involved to be vested in Hillsborough County, free and clear of all pre-existing claims and liens. The state statute [3] provides that, upon the entry of such a decree,

"* * * all rights, titles, interests in or liens upon said property * * * shall be cut off and extinguished and forever declared null and void and the title to such lands when conveyed by the county shall be construed in all respects as a new, original title * * *."

The County subsequently sold the property and by mesne conveyances title thereto became vested in the appellees, James R. Holland and his wife.

In a written opinion reported at 170 F.Supp. 459, the district court held that the Government's mortgage lien was subordinate to the later County lien for taxes, and, accordingly, was extinguished by the state judicial proceeding to quiet title to the property. Despite the failure to make the United States a party to the state proceeding, that holding might not be subject to attack if it were, in the first instance, conceded that the Government's mortgage lien was inferior to the later County lien for taxes. See United States v. Brosnan et al., (Bank of America, etc. v. United States), 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192. If, however, the Government's mortgage lien was superior, then the County could not reach the paramount lien of the United States through its taxing powers. As indicated in United States v. Boyd, 5 Cir., 1957, 246 F.2d 477, 483, it is the nature and relative rank of the respective liens which determines whether or not the enforcement of the one destroys the other.

It is well established that, in the absence of a controlling federal statute, the priority of federally created *tax* liens

---

supplied.) Even so, the lien of the mortgage is clearly a property right, and it is not material that it be treated as equitable in nature.

2. Fla.Stat.Ann. § 193.51.

3. Fla.Stat.Ann. § 194.53.

**936**

is determined by the rule that a lien first in time is first in right. United States v. City of New Britain, 1954, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520; Michigan v. United States, 1943, 317 U.S. 338, 340, 63 S.Ct. 302, 87 L.Ed. 312. That rule governing the priority of federal tax liens has been applied to federal mortgage liens as well. City of New Brunswick v. United States, 1928, 276 U.S. 547, 555, 48 S.Ct. 371, 72 L.Ed. 693; United States v. Latrobe Construction Co., 8 Cir., 1957, 246 F.2d 357, 364; Southwest Engine Co. v. United States, 10 Cir., 1960, 275 F.2d 106, 107.

■■ No state or county can tax the property interests of the United States in the absence of congressional consent. United States v. Allegheny County, 1944, 322 U.S. 174, 191, 64 S.Ct. 908, 88 L.Ed. 1209. There is no constitutional prohibition against a state or county assessing taxes against property on which the United States holds a lien on the basis of the full value of that property, but, in the absence of congressional consent, the state or county is without authority to enforce the collection of the taxes thus assessed so as to destroy the pre-existing federal lien. City of New Brunswick v. United States, supra, 276 U.S. 547, 556, 48 S.Ct. 371, 72 L.Ed. 693; S.R.A., Inc. v. State of Minnesota, 1946, 327 U.S. 558, 569, 66 S.Ct. 749, 90 L.Ed. 851; compare Bancroft Inv. Corporation v. City of Jacksonville, 1946, 157 Fla. 546, 27 So.2d 162.

The Emergency Relief Appropriation Act of 1935, 49 Stat. 115, contains no language consenting to local taxation of property interests acquired by the Resettlement Administration under said Act. In fact, a later amendment to the Act indicates that the congressional intention was precisely the contrary. In the Act of June 29, 1936, 49 Stat. 2036, Congress provided that, with respect to certain kinds of property acquired under the 1935 Act,

> "[u]pon the request of any State or political subdivision thereof, or any other local public taxing unit, * * * the Resettlement Administration is

authorized to enter into an agreement * * * for the payment by the United States of sums *in lieu of taxes.*" (Emphasis supplied.)

■ We hold that the state court decree purporting to divest all prior encumbrances and to quiet title to the mortgaged realty in the County did not operate to extinguish the Government's mortgage lien. Accordingly, the judgment is reversed and the cause remanded.

Reversed and remanded.